(Lucas County Probate Court.)

## THE BOARD OF COMMISSIONERS OF LUCAS COUNTY, OHIO, v. THE BOARD OF COMMISSIONERS OF FULTON COUNTY, OHIO.

Ditch law—Compensation from upper to lower county for benefit of drainage afforded by ditch in upper county—Act of March 14, 1893 construed—Authority of Probate Court on exceptions to the report of the appraisers appointed, to hear testimony as to proper amount of compensation—The word "modify" construed—

The amount of compensation awarded by the appraisers appointed to fix the compensation to be paid by the upper to the lower county under the act of March 14, 1893, is not equivalent to a verdict by a jury, and on exceptions to their finding, the Probate Court may hear testimony to ascertain what would be the proper amount of such compensation. and has authority to change such award.

(Decided October 19, 1894.)

MILLARD, J.

The board of commissioners of Lucas county, Ohio, filed in this court their petition against the board of commissioners of Fulton county Ohio, in which after due statement of the legal existence and capacity of each board, they alleged that Ten Mile Creek is a natural drain and water course, with its source in Fulton county, Ohio, and flowing through Fulton and Lucas counties into the Maumee river:

That said water course drained a large portion of Fulton county.

That the portion of it lying in Lucas county is an outlet to a large portion of the drainage system of Fulton county, Ohio, and that numerous ditches, both private and public, located in Fulton county, Ohio, empty into said Ten Mile creek in said county, thus throwing the water in large quantities down upon Lucas county, Ohio.

A number of other proper allegations are also in said petition.

November 2nd, 1894, the board of commissinors of Fulton filed a demurrer to the foregoing petition, which, upon hearing, was sustained by court, and leave given to file amended petition.

November 16th, 1894, the board of commissioners of Lucas county, Ohio, filed their amended petition, containing all proper allegations, and December 24th, 1894, the board of commissioners of Fulton county, Ohio, filed their answers to such amended petition, admitting the existence of each board; that Ten Mile Creek is a natural drain and water course and drains a large section in Fulton county, and that the portion of said creek in Lucas county is an outlet to the portion of Fulton county drained thereby, and deny all other allegations of the petition.

January 19th, 1895, the reply of the board of commissioners of Lucas county denying all allegations of this answer, was filed.

March 14th, 1895, hearing was had, and both boards of commissioners admitted to court, and made such admissions a matter of record, that said respective boards had been unable and had failed to agree upon the amount of compensation, as alleged in the petition (amended petition), filed by the board of commissioners of Lucas county, and thereupon the court found that proper proceedings were pending for the contemplated improvement, and appointed two freeholders to act in such pending proceedings, as by law directed. (Sec. 3. Laws 90 p. 82).

Exceptions were filed by the Fulton county board on said March 14th, 1895, to the finding of the court.

March 20th, 1895, like appointment of two freeholders was made by the probate court of Fulton county, Ohio, a certified copy of which order was filed with the probate court of Lucas county, Ohio, March 26th, 1895.

Such board of four freeholders met thereafter in the probate court of Lucas county, Ohio, were sworn to the faithful discharge of their duty and by court instructed, as by law directed.

The board of four freeholders, being unable to agree on proper compensation, selected a fifth man as by law required, and the board of freeholders, as thus constituted, filed with the court a report in which three members awarded Lucas county the sum of $415.84, and the other two members filed separate reports claiming that such award was wholly inadequate.

Exceptions were filed by the board of commissioners of Lucas county to this report of the majority of the board of freeholders, hearing of which is now before court, and the question now submitted to the court brings up the whole line of procedure under the ditch law of Ohio regulating dtches between lower and upper counties.

Counsel for the board of commissioners of Lucas county, desire to put on the witness-stand persons who can testify as to certain matters, per-

haps, which they deem important in determining the amount of compensation to be paid the lower by the upper counties.

Counsel for the board of commissioners of Fulton county, or the upper county, object to this, and claim that the five gentlemen who constituted the board of freeholders, were a jury to assess compensation, and this court, on exceptions, cannot review the determination of that jury, or alter their award, and cannot hear testimony not heard or considered by such jury of freeholders, as they style them.

As the determination of this question calls for a full consideration of the law under which we are acting, and a determination of the powers, rights and obligations of such viewers, as well as the scope of power and of duty of this court, we will go back to the first section of the law in question and make a general review, and thus determine the standing in this court, of all parties, as understood by the court.

The law having been declared constitutional by the supreme court of Ohio, and being comparatively a new law, with no reported decisions thereunder by the higher courts, other than as to its constitutionality, we must look to the law itself for all steps necessary to be taken thereunder, and to the ordinary use of words or the meaning thereof, for the understanding of its different provisions and requirements.

By reference to section 1 of said report, as in force to-day, we find that whenever a water course is opened or improved in an upper county, the waters of which flow into a lower county, or the commissioners of a lower county by improvement of a water course, provide better drainage or more sufficient outlet for the water course of an upper county, the commissioners of the upper county, by the terms of the law, shall pay to the commissioners of the lower county, such sum as may be agreed upon by the commissioners of both counties for the use and benefit of such outlet, and that such sum shall be agreed upon before the work of such construction, enlarging, etc., is begun. Provision is made as to procedure in arriving at such agreement.

Section 2 provides steps to be taken by the commissioners of the lower county in case of disagreement, or failure to agree.

Section 3 provides for the appointment of two freeholders by each of the upper and lower counties, and instructions to them by the court, all of which steps have been properly taken in this case.

The four freeholders thus chosen in this action according to law, failed, in this case, to agree as to amount of compensation due the lower from the upper county, and so reported to this court, in the first instance, only their inability to agree. The latter part of section 3 provides the remedy in such cases, which is to call to their assistance one other freeholder, not a resident or owner of real property in either of said counties, which was done by the four freeholders, in this case. Said section 3 prescribes the entire duty, specified in the law, of this board of freeholders.

It is, first, as to the board of four, that they, shall within thirty days thereafter, (the time of their meeting), upon actual view of the outlet ditch, or the territory to be drained by any such proposed improvement, and of the ditch or ditches in the upper county and of the land to be drained in the upper county, whose waters flow into said outlet, or will flow into such proposed outlet or proposed improvement thereof, estimate and report to the court the amount which should justly be paid by said upper county for the use and benefit of said outlet ditch or for any improvement thereof."

These few words embrace their entire duty and fix the limit to which they can go. They can make no assessments, make no final order or de-

termination, and only estimate and report to the court the just amount which should be paid by the upper to the lower county.

Do these words indicate that the legislature intended that this board of freeholders should be a jury to finally determine the amount of compensation? Does it not, rather, suggest that they were to make what in their judgment would seem a fair estimate of value, and to which the court could direct evidence upon a hearing, if one became necessary, and the farther action of court is anticipated in the wording of the law? Did the law stop here, the court would have no doubt but that their act was merely advisory to the court; but the section continues as follows:—"Provided, that if said board of four freeholders shall not be able to agree upon the amount to be paid by said upper county to said lower county, then they shall call to their assistance one other freeholder who shall not be a resident or owner of real property of either of said counties, and the said five freeholders shall forthwith proceed to determine the amount of damages the said upper county shall pay to the said lower county, and report the same as herein provided."

These words appear to give more of a character of judgment to their estimate than do the words setting forth what the four freeholders shall do, and yet, it will be noticed, that after all they are to report to the court "the same as herein provided."

Is it to be presumed that the legislature intended to confer upon the board of five any greater power than was given the board of four freeholders? I think not; and that they still intended to have the court given the benefit of the estimate of these disinterested freeholders on which it might base a judgment to be made binding on the respective parties. That I am correct in this view of legislative intent, I think is borne out by the provisions of section 4 of said act, which reads:—"Either of the parties to said action may within ten days of the filing of said report,"—not award of damages or judgment, but report—"file exceptions thereto, which exceptions the court shall hear and determine, and shall confirm, modify, or set aside said report as justice may require. And if the same be set aside, other freeholders shall be appointed as provided in section 3 of said act, who shall estimate"—now, notice, shall estimate, not determine—"and report as provided in said section, and the decision of the court upon this report shall be final, unless the same shall be reversed, upon proceedings in error, for error of law occurring upon such hearing, or because the determination of the court upon exceptions thereto is against the weight of the evidence."

Does not this whole section 4 look to a trial of facts under this report of the board of freeholders if either of the interested parties are dissatisfied therewith? If not, what is meant by the decision of the court upon the report being final unless reversed for errors of law occurring upon such hearing, or because the determination of the court is against the weight of evidence? What evidence? Certainly not that of the view made by the freeholders, for the court has not and cannot have that before it. It must be the weight of the evidence taken on the hearing of exceptions to the report of the freeholders; taken to show that their estimate was improperly made, or unjustly made. In passing on an enactment of the legislature it is a rule of courts to give such interpretation, when possible, either from the direct words or fair implication, as will give force and effect to such enactment in all its parts, and make effective the legislative intent.

If we follow this rule in this joint ditch law, can we find within its words, or the fair inference of the intent of the legislature, a definite, consistent and feasable course of procedure marked out, by which no part

of the law is inconsistent with another, and by which a perfect remedy is given to all parties in interest in any controversy that may arsie? If so, the law is to be sustained and the remedy applied as provided therein.

The statements and arguments of counsel in the trial of this case to the present point have, I think, given to the court a pretty clear idea of the claims of each side; and while some of the points have not been presented in detail and with such elaborate argument as counsel might desire, I believe it better that the court now give its conception of the law and the proper practice thereunder, that counsel may early be advised what to meet, rather than to meet and discuss in detail each point, and necessarily have much repetition.

Therefore, the opinion of this court, regarding this law, is 1st. That the freeholders do not constitute a jury whose estimate is binding on the court where either party to the action excepts to their report. And their report to court is advisory only, and when acceptable to all parties, warrants the court in approving and confirming the same without further action by the parties in interest, and in certifying such report to the commissioners of the upper county for their further action thereunder.

2nd. That it is no part of the duty of such freeholders, nor are they warranted in taking any evidence of parties, other than their own senses, to make up their estimate of the sum which the upper should pay to the lower county, and that, under the law, they are to examine all territory involved in the accruing benefit, to enable them, without assistance from others, to give to the court their individual and collective judgment as to the proper estimate of benefit derived by the upper county from the proposed improvement.

3rd. That when exceptions are filed by either party to the report of freeholders filed with court, it is the intention of the law that a full hearing shall be had by the court, at which all parties in interest can be heard, and from the evidence thus adduced at such hearing, the court must determine whether the freeholders erred in judgment in making up their estimate so reported to the court, whether they had or had not disobeyed the instructions given them by court, and whether there was any reason which should have been considered, but was not, in preparing their estimate, as well as anything else which should be considered in determining the amount which should justly be paid, etc. And from this evidence, on such hearing, the court will be warranted in confirming, modifying or setting aside said report, as justice may require.

4th. That the word "modify" as used in the law—section 4—means: change, or is equivalent to the word change. To give to it any other meaning would, it seems to court, render meaningless the central idea of the power conferred, as expressed in the closing words of the sentence, "As justice may require." The whole idea of the hearing is to do justice between the parties. Were the court unable to increase the amount awarded, if evidence showed that the sum was too low, how could the court do as justice may require?

Either party may except to the report. The freeholders are just as liable to make an award too low as too high; and if the court can only render relief to the party estimated too high, how could it render relief as the evidence might show "that justice may require?"

That this word "modify" is used in this sense frequently, I think all will admit. The shipbuilder prepares a draft of a proposed vessel. The plan is submitted to the person for whom it is to be built. He does not like the lines of the proposed draft. Its proportions are not good. He modifies those lines by adding here and deducting there until he has a

boat symmetrical to his eye.    In other words, he changes the shape of his boat.

Other similar uses of the word will suggest themselves.    If the views of the court be correct, it follows that both plaintiff and defendant are entitled to be heard for and against this report of the freeholders, and from the evidence thus adduced, the court will be authorized to confirm, modify—change—or set aside the report as justice may require.

J. A. Barber and Hiram VanCampen, for plaintiff.

W. W. Touvelle, and Doyle, Scott & Lewis, for defendant.